UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **SEALED INDICTMENT** |
| v. | 23 Cr. |
| DOUGLAS RAYMOND ARNTSEN, | |
| Defendant. | **23 CRIM 568** |

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury charges:

Overview

1.      From at least in or about June 2020 through at least in or about August 2020,

DOUGLAS RAYMOND ARNTSEN, the defendant, orchestrated a scheme to prepare and submit

fraudulent applications to the United States Small Business Administration (the "SBA"), in order

to obtain at least approximately $1.3 million in government-funded loans through the SBA's

Economic Injury Disaster Loan ("EIDL") program.

The SBA's EIDL Program

2.      The SBA is a federal agency that administers assistance to American small

businesses.  This assistance includes issuing certain loans, and guaranteeing loans issued by certain

lenders, to qualifying small businesses, including through the EIDL program.

3.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal

law enacted on March 29, 2020, designed to provide emergency financial assistance to the millions

of Americans who were suffering the *economic* effects caused by the COVID-19 pandemic.

Among other things, the CARES Act expanded the SBA's EIDL program in order to provide vital

economic support to help small businesses overcome the loss of revenue experienced due to COVID-19. Loans under the EIDL program are made directly by the SBA.

4.     To qualify for an EIDL under the CARES Act, an applicant had to have suffered "substantial economic injury" from COVID-19, based on an actual economic injury determined by the SBA. EIDLs could only be used for certain specified purposes, such as for payroll and other similar costs, increased costs due to supply chain interruption, to pay obligations that could not be met due to revenue loss, and for other similar uses.

5.     The SBA determined the amount of a loan to fund in large part by looking at the self-reported financials of the business applying for the loan; generally, the higher the revenues of the business, the larger the loan.

ARNTSEN's Fraudulent Scheme

6.     Between in or about June 2020 through at least in or about August 2020, DOUGLAS RAYMOND ARNTSEN, the defendant, recruited multiple co-conspirators to assist in his fraud on the SBA. ARNTSEN generally recruited people with good credit and no criminal background who were otherwise in need of money. ARNTSEN promised potential co-conspirators a way out of their difficult financial circumstances. Certain of the co-conspirators trusted ARNTSEN because they believed him to be an attorney. In reality, ARNTSEN had been disbarred. At times, ARNTSEN encouraged potential co-conspirators to join the scheme quickly, by suggesting that there was only a limited amount of funds available from the government. For example, in recruiting one co-conspirator, ARNTSEN wrote, in sum and substance, "My concern is they are depleting funds by the day and I want you in."

7.     Once DOUGLAS RAYMOND ARNTSEN, the defendant, had recruited a co-conspirator, the scheme followed a pattern. ARNTSEN would ask his co-conspirators to give him

their personal information, including social security and driver's license numbers, and then use this information to apply for loans through the EIDL program. The applications submitted by ARNTSEN falsely claimed that the co-conspirators owned businesses that had substantial revenue. In reality, these businesses either had no revenue or revenue that was far lower than what was claimed. Often, the co-conspirators named as the owners of the businesses in the EIDL applications, in fact, had no legitimate connection to the businesses at all.

8.    In one case, a co-conspirator reached out to DOUGLAS RAYMOND ARNTSEN, the defendant, in an email, asking for help with "crazy [car] payments that I can't even afford." ARNTSEN's responded, "[t]here may be a way," and then asked for the co-conspirator's credit score. Shortly thereafter, ARNTSEN had submitted on behalf of the co-conspirator a fraudulent loan application, which falsely claimed the co-conspirator had a business with $446,000 of "Gross Revenues."

9.    DOUGLAS RAYMOND ARNTSEN, the defendant, also directed his co-conspirators to lie to the SBA during the loan diligence process. For example, in one email, he wrote, in sum and substance, that his co-conspirators should falsely claim, among other things, to own "a home improvement and design company" that was "[f]ormed in Delaware in August, 2011."

10.    DOUGLAS RAYMOND ARNTSEN, the defendant, and his co-conspirators enriched themselves through their fraudulent scheme. In some cases, ARNTSEN gave co-conspirators a cut of the fraudulent loans. For example, after one fraudulent loan was approved by the SBA, ARNTSEN texted a co-conspirator, in sum and substance, "Need how you want your bank checks. Your chariot has arrived this morning." In other cases, the proceeds of the fraudulent loans were sent to co-conspirators' bank accounts directly. The co-conspirators would then send

money to ARNTSEN as payment for submitting the fraudulent loan applications.

11.     In addition to using the co-conspirators' personal information to apply for fraudulent loans, DOUGLAS RAYMOND ARNTSEN, the defendant, worked with co-conspirators to obtain the personal information of others—including the information of the co-conspirators' family members—and then used that information to apply for additional fraudulent loans.  For example, after one co-conspirator had obtained a fraudulent loan, ARNTSEN directed him, in sum and substance, to "[g]et me one more warm body."  The co-conspirator proceeded to give ARNTSEN the personal information of a relative, which was then used to obtain another fraudulent loan.

12.     In total, DOUGLAS RAYMOND ARNTSEN, the defendant, with the assistance of his co-conspirators, obtained at least approximately $1.3 million in fraudulent loans from the SBA, and attempted to obtain hundreds of thousands of additional fraudulent loans that the SBA declined to fund.  The proceeds from these fraudulently obtained loans were largely not used to fund the operations of legitimate businesses.

<u>Statutory Allegations</u>

13.     From at least in or about June 2020 through at least in or about August 2020, in the Southern District of New York and elsewhere, DOUGLAS RAYMOND ARNTSEN, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

14.     It was a part and an object of the conspiracy that DOUGLAS RAYMOND ARNTSEN, the defendant, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by

4

means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, ARNTSEN orchestrated a scheme to fraudulently obtain loans from the SBA through the EIDL program and caused interstate wires to be sent through the Southern District of New York in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

### COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

15.     From at least in or about June 2020 through at least in or about August 2020, in the Southern District of New York and elsewhere, DOUGLAS RAYMOND ARNTSEN, the defendant, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, ARNTSEN orchestrated a scheme to fraudulently obtain loans from the SBA through the EIDL program and caused interstate wires to be sent through the Southern District of New York in furtherance of that scheme.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT THREE
### (Aggravated Identity Theft)

16.     From at least in or about June 2020 through at least in or about August 2020, in the

5

Southern District of New York and elsewhere, DOUGLAS RAYMOND ARNTSEN, the defendant, knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, ARNTSEN transferred and possessed, and aided and abetted the use of, names, dates of birth, and social security numbers, and other means of identification, of other persons during and in relation to the conspiracy to commit wire fraud and wire fraud violations charged in Counts One and Two of this Indictment.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

**FORFEITURE ALLEGATION**

17.     As a result of committing the offense alleged in Counts One and Two of this Indictment, DOUGLAS RAYMOND ARNTSEN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28 United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

**Substitute Assets Provision**

18.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third person;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)


FOREPERSON

Damian Williams

DAMIAN WILLIAMS
United States Attorney

7